```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MARCEL MENDEZ, on behalf of himself and :
others similarly situated, and the      :
proposed Rule 23 Class,                 :   11 Civ. 6316 (DLC)
                          Plaintiff,    :
                                        :   OPINION & ORDER
            -v-                         :
                                        :
PIZZA ON STONE, LLC (d/b/a ADRIANNE'S   :
PIZZA BAR), FRANK CASANO, PETER         :
POULAKAKOS, FRANCO ESCOBARE, and        :
FRANCISCO MARTINEZ,                     :
                         Defendants.    :
                                        :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:

C.K. Lee
Lee Litigation Group, PLLC
30 East 39th Street, 2d Floor
New York, NY 10016


For the defendants:

Stuart E. Nahas
Zraick, Nahas & Rich
303 Fifth Avenue
New York, NY 10016

Wayne S. Kreger
Law Offices of Wayne Kreger
303 Fifth Avenue
New York, NY 10016


DENISE COTE, District Judge:

    Plaintiff Marcel Mendez ("Mendez") brings this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 206 et seq., and the New York Labor Law ("NYLL"), Art. 6 § 190 et seq., and Art. 19 § 650 et seq., against the restaurant at which he was employed as a delivery person between 2006 and 2011.[1]  Mendez moves for class certification of his NYLL claims pursuant to Rules 23(a) and 23(b)(3), Fed. R. Civ. P. Mendez's class certification motion is granted.

BACKGROUND

Defendants Frank Casano ("Casano") and Peter Poulakakos ("Poulakakos") are the co-owners of Pizza on Stone, LLC ("Pizza"), which owns and operates Adrienne's Pizza Bar ("Adrienne's").  Defendant Nick Angelis ("Angelis") is the manager of Adrienne's, and exercises responsibility over employee wages and shift schedules.  Mendez was employed as a delivery person at Adrienne's from September 2006 until April 14, 2011.

Pizza paid Mendez and other delivery persons a fixed weekly salary through the end of 2009.  Mendez's salary during this period ranged from $325.50 per week to $375.50 per week.  During this period, Pizza scheduled its delivery employees to work in shifts, with afternoon shifts running for four hours and evening shifts running for five hours.  Until January 2010, Pizza did

---

[1] Mendez also brings claims against the restaurant's co-owners, as well as two restaurant employees.  The parties' cross motions on employer liability are addressed in a separate Order.

not keep records of the number of hours worked by employees paid by fixed weekly salary, including delivery employees and kitchen staff.

On January 1, 2010, Pizza converted to a time clock system for recording hours worked by its employees, including those employees whose hours Pizza did not previously record.  Also on January 1, Pizza began paying its delivery employees and kitchen staff at an hourly rate.  Pizza's payroll records reflect that Mendez was paid $9.75 per hour from January 1 until his employment ended, and was also paid overtime at time-and-one-half his regular rate of pay for all hours worked over 40 in a week.

With the exception of delivery employees and kitchen staff, Pizza has always paid its other employees, including wait staff and bartenders, at an hourly rate.  Pizza claims a tip credit allowance on its wage payments to these employees.

Mendez's complaint was filed on September 9, 2011.  Mendez filed an amended complaint on December 16.  On March 29, 2012, Mendez's motion for the issuance of an FLSA collective action notice was granted.  On May 18, Mendez moved for class certification of his NYLL claims.  On May 31, the defendants moved for partial summary judgment, and Mendez moved for partial

summary judgment on June 1.[2]  Mendez's class certification motion became fully submitted on June 8.

DISCUSSION

　　　Mendez moves for class certification of his NYLL claims, pursuant to Rules 23(a) and 23(b)(3), Fed. R. Civ. P.  He seeks to certify a class consisting of all non-exempt Pizza employees from September 9, 2005 to the present.

　　　"[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met."  In re Initial Pub. Offering Sec. Litig. ("In re IPO"), 471 F.3d 24, 27 (2d Cir. 2006).  Thus, the plaintiffs will be able to sue as representatives of a class

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed. R. Civ. P.; see Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010).

> What matters to class certification is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

---

[2] The summary judgment motions are addressed in separate Orders issued today.

4

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  If the Rule 23(a) criteria are satisfied, an action may be maintained as a class action only if it also qualifies under at least one of the categories provided in Rule 23(b).  Rule 23(b), Fed. R. Civ. P.; Brown, 609 F.3d at 476.

Mendez seeks to certify a class under Rule 23(b)(3).  Rule 23(b)(3) permits certification "if the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3), Fed. R. Civ. P.; Brown, 609 F.3d at 476.

"In evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement."  Brown, 609 F.3d at 476 (quoting In re IPO, 471 F.3d at 41).  "The Rule 23 requirements must be established by at least a preponderance of the evidence."  Brown, 609 F.3d at 476 (citation omitted).  In other words, the district judge must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."  Teamsters Local 445 Freight Div.

Pension Fund v. Bombardier, Inc., 546 F.3d 196, 204 (2d Cir. 2008) (citation omitted).  The burden of proving compliance with all of the requirements of Rule 23 rests with the party moving for certification.  In re IPO, 471 F.3d at 40.

In this case, the numerosity requirement is satisfied.  The defendants do not dispute that the putative class, non-exempt employees of Pizza from September 9, 2005, to the present, numbers over 100 individuals, rendering "joinder of all members . . . impractical."  Rule 23(a)(1), Fed. R. Civ. P.

The commonality and typicality requirements for class certification are also satisfied in this case.

> The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).  The crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (citation omitted).  "The commonality requirement is met if there is a common question of law or fact shared by the class." Brown, 609 F.3d at 475.  "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members."  Id.  The requirement "is satisfied when each class member's claim arises from the same

6

course of events, and each class member makes similar legal arguments to prove the defendant's liability." Id.

Common questions of law and fact unite Mendez's proposed class, and Mendez's wage and hour claims are representative of those that could be brought by other Pizza employees during the class period. Until at least 2010, when Pizza switched to a time clock system to keep track of all employee hours worked, Pizza failed to keep records of the actual hours worked by its delivery employees and kitchen staff, as required by the NYLL. See NYLL § 661; 12 N.Y.C.R.R. § 142-2.6. The NYLL's record-keeping requirements are "substantive obligations that are fundamental underpinnings of [the NYLL] and critical to ensuring [its] effectiveness, for an employer's failure to keep accurate records can obscure a multitude of wage and overtime violations." Lanzetta v. Florio's Enter., Inc., 763 F.Supp.2d 615, 618 (S.D.N.Y. 2011) (citation omitted). Pizza concedes this violation of the NYLL's record-keeping provisions with respect to delivery employees and kitchen staff. Pizza's failure to keep accurate records of hours worked is a significant common violation that lowers the burden of proof for those employees for whom records were not properly kept to demonstrate they were not paid proper minimum wage, overtime, and spread of hours. See NYLL § 196-a; Padilla v. Manlapaz, 643 F.Supp.2d 302, 307 (E.D.N.Y. 2009).

Pizza does not seriously dispute that other delivery employees as well as kitchen staff are similarly situated to Mendez with respect to Pizza's payment practices. Pizza asserts, however, that Pizza's waitstaff, bartenders, and busboys (collectively "dining room employees") cannot be part of the class, for two separate reasons.

First, Pizza argues that the very different duties performed by delivery employees and dining room employees mean that dining room employees are not similarly situated to Mendez for purposes of his claims against Pizza. This argument is easily dispensed with. Mendez challenges Pizza's payment practices, and no claim or defense presented at this stage depends upon the tasks employees performed. Differences in duties performed by delivery employees and dining room employees are therefore irrelevant.

Next, Pizza argues that while it may have paid Mendez and other delivery employees improperly, it has always paid its dining room employees in an entirely lawful manner. Pizza admits that Mendez earned tips as a delivery employee, and acknowledges that it took the tips earned by delivery employees into account in setting their compensation. It does not, however, argue that it was entitled to take a "tip credit" against the minimum wage it was otherwise required to pay Mendez, or seek to interpose full compliance with the NYLL's tip

credit provisions as a defense to Mendez's minimum wage claims. But, Pizza does argue that it complied fully with the NYLL's tip credit provisions in paying dining room employees the "tipped minimum wage", and that the existence of this defense means that dining room employees are not similarly situated to Mendez for purposes of challenging Pizza's payment practices.

Pizza's attempt to cast dining room employees as a fully separate category of employees fails at this stage.  As an initial matter, Pizza admits that it did not utilize a time clock system for tracking dining room employee hours prior to January 1, 2010.  Pizza has not explained how it kept track of dining room employee hours before that date.  A common question therefore exists as to whether Pizza's procedures for keeping track of the actual hours worked by its employees were reliable.

As significantly, Pizza has not shown that it is likely to prevail on a defense that it complied with the statutory requirements necessary to take a tip credit against the minimum wage otherwise due dining room employees such that dining room employees stand in different shoes from other tipped employees, including Mendez.  New York law currently provides that an employer "may take a tip credit towards the basic minimum hourly rate" if an employee receives a sufficient amount in tips and the employer complies with notice requirements.  12 N.Y.C.R.R.

9

§ 146-1.3.  To fulfill the NYLL's notice requirements, the employer must, prior to the start of employment,

> give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

12 N.Y.C.R.R. § 146-2.2(a).  Section 146-2.2 also provides that employers must provide this notice to employees "prior to any change in the employee's hourly rates of pay", that the employer must keep acknowledgments of receipt of notice signed by employees on file for six years, and that the employer has the burden of proving compliance with these requirements.  12 N.Y.C.R.R. § 146-2.2(b)-(d).

Pizza is correct that these provisions bearing on an employer's ability to take a tip credit against the minimum wage became effective on January 1, 2011.  Prior to that date, however, the NYLL "impose[d] certain notice requirements on employers that [were] strict prerequisites to taking [tip credits]."  Lanzetta, 763 F.Supp.2d at 623 (citation omitted). Employers were required to (1) "maintain and preserve for not less than six years weekly payroll records which shall show for each employee . . . allowances, if any, claimed as part of the minimum wage," including tip credit allowances, 12 N.Y.C.R.R. § 137-2.1(a)(7); and (2) "furnish to each employee a statement

10

with every payment of wages listing . . . allowances, if any, claimed as part of the minimum wage . . . ."  12 N.Y.C.R.R. § 137-2.2.  Accord Lanzetta, 763 F.Supp.2d at 623; Padilla, 643 F.Supp.2d at 309-10.

Pizza has not described the manner in which it provided notice of tip credits taken against the minimum wage to dining room employees, or otherwise made a showing that it complied with the statutory notice requirements in place either before or after January 1, 2011.[3]  Pizza has identified Angelis as the individual responsible for the "rate of employee compensation and method of payment" as well as the "maint[enance of] employment records" at Pizza.  At his deposition, Angelis stated that he does not provide Pizza employees with written notice of the terms of their employment, and does not know what a "tip credit" is.

Based on the record presented on this motion, Pizza has not made a sufficient showing that it is likely to prevail on its argument that dining room employees were lawfully paid such that

---

[3] Pizza uses a third-party vendor, Prime Pay LLC ("Prime"), to generate payroll records and wage statements.  Pizza does not, however, argue that its use of Prime's services relieves Pizza of the obligation to comply with the NYLL's tip credit notice requirements.  In an affidavit, Prime's Dennis Crokos ("Crokos") states that Prime provides Pizza with employee wage statements "itemizing regular hours worked, overtime hours, and Federal, State, and local withholding amounts".  Crokos' affidavit is silent, however, as to whether the wage statements provided by Prime to Pizza include tip credits claimed by Pizza against the minimum wage for each employee.

this group of employees should not be included in Mendez's class.  The Court, however, reserves the right to create a sub-class in the future if it ever appears that the interests of dining room employees and other employees diverge in a manner that warrants separate treatment.

Mendez also satisfies the final Rule 23(a) requirement, of adequacy of representation.  The defendants do not dispute that Mendez "will fairly and adequately protect the interests of the class," Rule 23(a)(4), Fed. R. Civ. P., and there is no suggestion that class members "have interests that are antagonistic to one another."  Brown, 609 F.3d at 479.

Finally, Mendez's proposed class satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over questions affecting only individual class members, and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3), Fed. R. Civ. P.  Rule 23(b)(3)'s predominance requirement is met only "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."  Brown, 609 F.3d at 483 (citation omitted).  The common issues include Pizza's record-keeping, and practices in paying minimum wage, overtime, and spread of hours for all class

12

members. These common questions predominate over issues involving individualized proof for each class member of hours worked, damages, and similar issues. Given the predominance of common questions and a class that may potentially number greater than 100 individuals, a class action is superior to other available methods for hearing state wage and hour claims against Pizza.

The defendants argue that Rule 23(b)(3)'s predominance requirement is not satisfied because class members performed disparate functions for Pizza. But the defendants have failed to identify the relevance of job duties to the core issues underlying Mendez's NYLL claims -- that Pizza failed to reliably record its employees' hours of work and to pay minimum wages, overtime, and spread of hours.

CONCLUSION

Mendez's May 18 motion for class certification of his NYLL claims is granted.

SO ORDERED:

Dated:   New York, New York
         August 1, 2012

                                       _____
                                              DENISE COTE
                                       United States District Judge