```
 1   D890MENC                      Fairness Hearing

 2   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 3   ------------------------------x

 4   MARCEL MENDEZ, et al,

 5               Plaintiff,

 6          v.                                 11 CV 06316

 7   PIZZA ON STONE, et al,

 8               Defendant.

 9   ------------------------------x
                                               New York, N.Y.
10                                             August 9, 2013
                                               2:00 p.m.
11
     Before:
12
                          HON. DENISE COTE,
13
                                          District Judge
14
                              APPEARANCES
15
     LEE LITIGATION GROUP
16        Attorneys for Plaintiff
     BY:  C.K. LEE
17        ANNE SEELIG

18

     LAW OFFICES OF WAYNE KREGER
19        Attorneys for Defendant
     BY:  WAYNE KREGER
20
     ZRAICK NAHAS & RICH
21        Attorneys for Defendant
     BY:  STUART E. NAHAS
22

23

24

25
```

1            THE DEPUTY CLERK:  All rise.  Please be seated.
2            The matter of Marcel Mendez against Pizza on Stone,
3    LCC, and others.
4            Counsel for plaintiffs, please state your names for
5    the record.
6            MR. LEE:   C.K. Lee, good afternoon.
7            MS. SEELIG:  Anne Seelig, good afternoon, your Honor.
8            THE DEPUTY CLERK:  For defendant?
9            MR. KREGER:  Wayne Kreger.
10           MR. NAHAS:  Stuart Nahas.
11           THE COURT:  Welcome, everyone.
12           We are here for a fairness hearing with respect to a
13   settlement in this class action and, indeed, the resolution of
14   the entirety of this action.  And this has a long and tortured
15   history, so I know counsel are fully familiar with that.
16           There was information that would be very helpful to me
17   in assessing this application that I didn't find, or it at
18   least may have been in the materials, but I did not find it.
19           There was a representation that 15 people joined this
20   litigation.  I did not know what that meant.  I didn't know if
21   that meant 15 people filed claim forms.  I don't think I have
22   15 opt-in plaintiffs under the FLSA action.
23           Can you tell me, Mr. Lee, what the number 15
24   represents.
25           MR. LEE: Yes, your Honor.  It's 15, the opt-ins,

1    there are people that opted into this settlement, plus the
2    three people who had been part of the claim.
3              Mr. Marcel Mendez was the named claimant.  And during
4    the course of the action, Elvis Santana and Andres Robles had
5    opted into the lawsuit.  And then subsequently after we sent
6    the mailing for the class settlement, an additional number of
7    people joined the action.  So the total was 15.  And I have the
8    names of the 15 claimants, your Honor, if you would like for me
9    to read them onto the record.
10             THE COURT:  No.
11             Are you telling me that 15 consent forms have been
12   filed with the clerk of court?
13             MR. LEE:  Yes.
14             MS. SEELIG:  Your Honor, if I may, I think what you're
15   asking is whether or not they filed claim forms --
16             THE COURT:  No.  I am asking that -- I'm asking what
17   does the 15 represent.  You know --
18             MR. LEE:  The 15 represents people that filed the
19   claim forms and the initial named claimants.
20             THE COURT:  So, Mr. Lee, this is an FLSA action.  Yes?
21             MR. LEE:  Yes.
22             THE COURT:  And a New York Labor Law action?
23             MR. LEE:  Yes.
24             THE COURT:  To join the FLSA action, you must file a
25   consent form and file it with the clerk of court.

1           MR. LEE:  Yes.
2           THE COURT:  To participate in the class action
3   settlement, you must file a claim form.
4           MR. LEE:  Yes.
5           THE COURT:  Fifteen people filed claim forms.
6           MR. LEE:  Yes, that's my understanding.  Yes.
7           THE COURT:  Okay.  So you use, in your papers, the
8   term "joined."
9           MR. LEE:  Yes.
10          THE COURT:  That's different.
11          MR. LEE:  I apologize.
12          THE COURT:  Joining an FLSA action would mean filing a
13  consent form with the clerk of court.
14          So you had, if I understand you, now, correctly, 18
15  people who are going to participate in the settlement fund, the
16  three people who joined the FLSA action, and 15 additional
17  people who filed claim forms; is that correct?
18          MR. LEE:  Actually, the three, plus 12.
19          THE COURT:  Okay.  So we have 15, in total, filed
20  claim forms.  And the period to file claim forms has ended; is
21  the correct?
22          MR. LEE:  Yes.
23          THE COURT:  And when you do the calculation of the
24  damages for these 15 people, the total amount to be distributed
25  to them is $9,740, is that right?

1           MR. LEE:  9,746.4.

2           THE COURT:  I'm sorry, what?

3           MR. LEE:  $9,746.40.

4           THE COURT:  9,700 --

5           MR. LEE:  $46.40.

6           THE COURT:  And of those 15 people, can you describe
7   the positions that they held at the restaurant, generally; you
8   know, how many people were delivery people, how many people
9   were waiters, et cetera.

10          MR. LEE:  Yes, your Honor.  Chu --

11          THE COURT:  No, I don't want their names.

12          MR. LEE:  Okay, sure.

13          THE COURT:  I asked for the numbers.

14          MR. LEE:  Okay.  There were five waiters, two delivery
15  people, four kitchen workers, and two bussers and a person of
16  whom we don't know his working position.

17          THE COURT:  I take it there is two more people you
18  don't know what they did.

19          MR. LEE:  Um --

20          THE COURT:  And with respect to these employees, are
21  all of them former employees, or are any of them current
22  employees?

23          MR. LEE:  There are two employees that are current,
24  James Hernandez and Nicole Papoulis.

25          THE COURT:  And so that means 13 who are former?

1            MR. LEE:  Yes.

2            THE COURT:  And the distribution that current

3   employees would be entitled to under the allocation formula,

4   but who have not submitted claim forms, would be $54,420; is

5   that right?

6            MR. LEE:  Yes, your Honor.

7            THE COURT:  So a sum of several multiples beyond the

8   amount actually distributed to current and former employees?

9            MR. LEE:  Yes, your Honor.

10           THE COURT:  Now, I believe at the time of preliminary

11  approval, I identified a couple of issues that needed careful

12  evaluation at the time of this fairness hearing.  And that is

13  in connection with the allocation formula, wage rate

14  differences, which could be significant among the employee

15  population here, were not considered.  And in addition, the

16  allocation is based on the defendant's record which may be far

17  less reliable for certain categories of employees.

18           I believe the defendant changed his bookkeeping

19  practices and payment practices a couple of years ago and,

20  therefore, more current records are probably far more reliable.

21  But there was a period of time when recordkeeping was less than

22  optimal, and we have those problems.

23           So I was going to be alert to that in terms of any

24  objections we might receive.  We have not received any

25  objections.  And notice was distributed.

1                There was always an observation by the defendants that
2    there may be a minimal entitlement to recovery, particularly by
3    tipped employees, because they were paid, as far as the
4    defendants were concerned, significantly beyond the minimum
5    wage and, therefore, would be able to show limited damages, if
6    any, here.
7                This is a case in which the plaintiffs took four
8    depositions, the defendants took one.
9                We structured the settlement such that any chance that
10   there would be retaliatory treatment which would lessen the
11   participation level in the fund was dealt with by setting aside
12   funds for current employees through the cy près system.  I'm
13   not finding there was any retaliation.  I have no evidence of
14   that.  But we just made sure that that was not an issue and it
15   was off the table.
16               We had six people who specifically opted out of the
17   settlement before notice was distributed.  Our claim form date
18   has closed, as I have already explored on the record with Mr.
19   Lee.
20               There was an initial application here for
21   administrative fees by Mr. Lee's firm for $25,000.  He has now
22   reduced that to 18,000.
23               There is a request for service awards.  I'm not making
24   any service awards.  I gave plaintiff's counsel notice of that.
25   It is not my practice.  And it would be in this case, but I

1   think in all cases, unwise to give service awards.  The issue
2   is is the named plaintiff going to be in precisely the same
3   shoes as the other class members, such that when they advocate
4   for support of the settlement, it is not because they think
5   they are going to get some special treatment, but because they
6   think the settlement is fair for every class member and fair
7   for them, because they will be treated like every class member.
8            Obviously, if they suffered any out-of-pocket losses
9   or expenses, I would be happy to reimburse that.  I have no
10  representation that they suffered any out-of-pocket expenses.
11           MR. LEE:  There were none, your Honor.
12           THE COURT:  There is a request for attorney's fees
13  here, in addition to the administrative fees for Mr. Lee's
14  separate administrative firm.  There is a request for
15  attorney's fees for his law firm of over $116,000.  He does a
16  load star calculation of fees in the amount of $227,000,
17  representing 580 hours of work.
18           This is a claims made settlement.  And so the amounts
19  not distributed will be returned to the defendant.
20           That's it for my preliminary comments.
21           Let's first deal with approval of the final approval
22  of the settlement and, then, we'll go to the attorney's fees
23  allocation.  I'm prepared to rule with respect to final
24  approval of the settlement.  Is there anything that either
25  plaintiff's counsel or defense counsel wishes to add?

1           MR. LEE:  No, your Honor.

2           MR. KREGER:  Nothing from defense, your Honor.

3           THE COURT:  Okay.  I'm going to approve this

4    settlement as fair and reasonable in the circumstances.

5    Indeed, as events have unfolded, extraordinarily generous.

6    There was no reason not to approve it.

7           We have no objections.  There was always this lurking

8    issue here about whether any current employees were actually

9    being harmed in any way under the relevant law.

10          Okay, let's turn to attorney's fees.

11          So, Mr. Lee, I'm not going to award you $116,000, or

12   anything close to it.  So this is an important part of the

13   proceeding in terms of assessing what the appropriate

14   attorney's fees are.

15          Now, I think our nation's wage and hour laws and New

16   York State's wage and hour laws are extraordinarily important.

17   I think litigation of this nature is extraordinarily important.

18   I think employees are entitled to a living wage.  They are

19   entitled to a minimum wage.  They are entitled to overtime pay.

20   Employers who can't run a business in compliance with the law

21   shouldn't be running a business.

22          But, litigation has to be conducted in a way that is

23   appropriate to the circumstance.  And what we have here is a

24   miniscule recovery.  I'm not suggesting that there can't be an

25   award of attorney's fees equal to, or greater than, the amount

1  recovered.  Each circumstance stands on its own.  But it
2  certainly is appropriate to consider the amount claimed and
3  awarded through the litigation to current and former employees
4  in deciding whether attorneys fees should be awarded, and
5  whether this kind of litigation should be encouraged.
6          Mr. Lee.  Anything you would like to say in connection
7  with an award of attorneys fees?
8          MR. LEE:  Yes, your Honor.
9          Just in regards to the proportionality.  My
10 understanding is that in the Second Circuit, under Hill, there
11 is no proportionality requirement.  And in terms of the number
12 of opt-in claimants, I mean there is -- there are instances,
13 for example in this case, where a lot of the individuals are
14 migrant workers so that, you know, a person can pursue this
15 lawsuit without knowing how many people would be opting in, or
16 be wanting to join the lawsuit.
17         So, you know, its if the Court were to, you know, I'm
18 not sure what the Court's view on the actual amount that is
19 intended to be awarded for attorneys fees.  But it really does
20 have a chilling effect on the amount of work that people are
21 looking -- that would be willing to pursue these claims for
22 indigent clients who can't pay you anything, and attorney is
23 not making any money and carrying a significant overhead in
24 order to do this kind of service.
25         Now, there are -- I guess individuals could

1    potentially go to the DOL, but my experience has been -- I have
2    gotten a lot of clients from who are not happy with the DOL.
3    Because it is a government service.  They are not motivated in
4    terms of, I guess, under a capitalist structure, to obtain as
5    much money for the client as possible.  And in this case, I
6    generated an award up to 250,000, which is significant.  And I
7    think I'm being penalized because people are not joining in the
8    case.  Nobody has objected to the unfairness of the settlement.
9    And this really just benefits the defendants.
10             THE COURT:  Well, I'm not sure I see the number of
11   $350,000 as the most relevant to the determination here, since
12   this was a claims-made settlement.  Because it was a
13   claims-made settlement, there was a risk that a defendant would
14   pressure current employees not to participate in the claim
15   process.  So that's why I suggested carving out the protection
16   that we have.  But even with that protection, we're talking
17   about a recovery of, you know, under $70,000 when, actually, to
18   the individual employees, current and former, it will be less
19   than $10,000 distributed.
20             MR. LEE:  Your Honor.
21             THE COURT:  I also have to say, Mr. Lee, there was a
22   frivolous summary judgment motion filed here.  There were
23   delays.  There were problems with the way that the case was
24   handled.  The endorsement and orders will reflect that.  And I
25   reviewed that.

1          So what we have is a case in which 15 employees out of
2    over 200 have participated.  An actual distribution of less
3    than $10,000.  At most, a proposed distribution of something
4    like $70,000, when you take the protection of the cy près fund
5    into account, as well.
6          I think one of the issues for counsel in this field is
7    the extent to which they want to pursue a class action in every
8    case, as opposed to using the FLSA process to identify people
9    who would like to join and participate in an action so that
10   what you have is a realistic number of people with an
11   understanding of the ways in which they have been precisely
12   harmed, and which should be rectified.
13         Sometimes I think class action is very important and a
14   necessary tool, but that is not always the case.  And the
15   existence of a class action claim changes the nature of the
16   litigation sometimes in a way that is entirely appropriate.
17   But, in this case, I'm not sure it was.  We even had only three
18   consent forms filed for the FLSA claim.  I'm certainly going to
19   compensate the expenses that were incurred both by your
20   administrative arm, Mr. Lee, and your law firm.  I have looked
21   at the description in the papers of those expenses and I find
22   they are appropriate.  And, certainly, the administrative fees,
23   in their reduced amount, are I think in the ballpark of what
24   one would expect.  They are now $18,000.  When you're looking
25   at a class of over 200 people, many of whom have moved and who

 1   are difficult to locate, there is work that has to be done to
 2   you know, fulfill the requirements of due process, and make
 3   sure that notice has been sent to our best ability to send it
 4   to them so it is received and they can participate.
 5           So the question for me is what would be appropriate in
 6   an award of attorneys fees here to provide essentially adequate
 7   incentives for plaintiff's lawyers who are doing this important
 8   work, but also to not promote activity which ends up not
 9   awarding any employees moneys that they actually deserve under
10   the law and yet become a penalty for the employer in terms of
11   payment of settlement amount, wholly apart from the attorney's
12   fees they incur in defending the action.
13           We had an employer here who largely performed its
14   practices, who was paid generously, at least certain classes of
15   employees.  And not all employers are the same, even in the
16   food and beverage industry.  So I'm going to reflect a little
17   bit on this and the appropriate amount.
18           MR. LEE:  May I?
19           THE COURT:  Yes, Mr. Lee.
20           MR. LEE:  Thank you, your Honor.
21           I recognize other points that your Honor has made,
22   especially the last point.  And that's why the parties had
23   originally decided, agreed, that the amounts would revert back
24   to the defendant, so it's not been duly punitive.
25           And in many situations people, instead of doing a

1   claims-made basis, they just do an automatic inclusion without
2   a reverter.  And if your Honor is -- I think what your Honor
3   has been insinuating is that because the amount may not
4   otherwise be paid out to the individual claimants, that my
5   legal fees should be reduced.  But if we step back and let's
6   say made this case so that it was not claims made, that we'll
7   just be dealing on a check.  People would not necessarily be
8   receiving the checks anyway.  I mean they may not receive the
9   check, or they may never cash it.  And so, ultimately, the
10  amount that may be left in the fund, may still be significant.
11          So I mean I think in the course of what your Honor has
12  been insinuating in this instance in terms of my legal fees, it
13  really motivates people to never do a reverter, to never do a
14  claims made mechanic for a class settlement.  Because basically
15  the attorney bringing the lawsuit and incurring all of the
16  risk, would face yet another risk of not getting paid for any
17  settlement that had been negotiated at arm's length between the
18  parties.
19          THE COURT:  Thank you for those observations, Mr. Lee.
20          I don't actually think that that's -- I know it's not
21  what I intended.  I don't think it is necessarily what is
22  implied by my observations.
23          There are appropriate settlements which I think should
24  be negotiated on a claims-made basis, as long as everyone's
25  rights are appropriately protected, as I think they were here.

1   I was talking more about -- well, I talked about a number of
2   aspects.  But in terms of the $350,000, which is the figure you
3   emphasize in your papers, I think that one has to look behind
4   that figure, in all fairness, to understand it in context.  And
5   that's what I have been trying to do with these observations.
6           So, what I'm going to do here is award $50,000 in
7   attorney's fees.  I will award the $18,000 in administrative
8   fees.  Obviously, we have cy près of $54,420.  We have the
9   distribution of $9,746.40.  And we have the expenses for the
10  administrator and for the law firm.
11          And, if you can get me a proposed judgment, Mr. Lee,
12  with those expenses added in and the total figure calculated, I
13  will be happy to sign that.
14          When can you do that by?
15          MR. LEE:  I could provide it by the end of next week,
16  your Honor.
17          THE COURT:  Okay, good.  Thank you so much.
18          (Adjourned)